465 So.2d 111 (1985)
Curtis BAZILE
v.
ARNAUD COFFEE COMPANY, Security Insurance Company, Hartford Insurance Company, Foltz Coffee, Tea & Spice Company, Inc., and United States Fidelity and Guaranty Company.
No. CA 2866.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 24, 1985.
*112 Mayer Finkelstein, New Orleans, for plaintiff-appellee.
James C. Cockfield, Metairie, for defendants-appellants Hartford Acc. and Indem. Co. and Arnaud Coffee Corp.
Timothy G. Schafer, Schafer & Schafer, New Orleans, for defendant-appellee Sec. Ins. Co.
Gus A. Fritchie, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendants-appellees Foltz Coffee, Tea & Spice Co., Inc. and U.S. Fidelity & Guar. Co.
Before SCHOTT, GARRISON and WILLIAMS, JJ.
GARRISON, Judge.
This is an appeal from a judgment of the district court rendered April 16 and signed April 30, 1984, granting reimbursement to Security Insurance Company in the amount of $8,612.39 for workmen's compensations benefits erroneously paid by Security. From that judgment, which we affirm, Hartford Accident & Indemnity Company appeals.
On February 28, 1980 Curtis Bazile, while employed by Arnaud Coffee Company, Inc. fell from a pepper canning machine and injured his right knee. Bazile, who had been employed by Arnaud for 20 years, reported the accident to Leo Saporita. Bazile was immediately sent to Houston, Roy, Faust (a medical firm) where he was examined by Dr. Roy on that same day. He again visited Dr. Roy on March 12, 1980. On March 18, 1980 he waited for two hours and finally left unexamined. On June 9, 1981, he returned in order to obtain Dr. Roy's "clearance" for an operation scheduled by Dr. Soboloff.
Dr. Roy testified that Curtis Bazile also consulted him on March 21, 1981 complaining that he had injured his wrist on the 9th while picking up a sack of coffee. Roy testified that on March 12 he referred Bazile to Dr. Soboloff for the wrist injury and that Roy made the appointment with Soboloff for March 10, 1981.[1]
Dr. Soboloff takes handwritten notes from which he dictates the patient history and the rest of the medical record. Soboloff testified that he always dictates within 24 hours because his handwritting is so illegible that he cannot read it after 2-3 days. With that in mind, Soboloff testified *113 from his report that he first saw Mr. Bazile on March 21, 1980 for a knee injury sustained on March 11, 1980, when Mr. Bazile struck his right knee on a scale. Later that same day, Mr. Bazile struck his knee a second time and noticed that the back of his knee was swollen. The swelling became worse and he developed both a Baker's cyst and chrondromalacia of the right kneecap. Mr. Bazile underwent conservative treatment consisting primarily of the anti-inflammatory drug Naprosyn. On April 18, 1980 he returned stating that the cyst had disappeared while he was using Naprosyn and seeking a refill of the prescription.
Dr. Soboloff further testified that Mr. Bazile visited his office on October 21, 1980 stating that the cyst had disappeared within 6 weeks of the Naprosyn refill. He had no difficulty until "recently"[2] when he had again struck his knee and noticed swelling and pain in the knee. Dr. Soboloff continued treating Mr. Bazile at 2-3 week intervals for a period of 6 months. Because the cyst did not disappear, Mr. Bazile underwent surgical removal of the cyst during June of 1981. Dr. Soboloff has assigned a 15-20% permanent disability of the knee of Mr. Bazile. Mr. Bazile still suffers from chrondromalacia. He cannot engage in persistent walking up and down stairs, climbing ladders, or working in a stooping position and should he do so, the kneecap must be removed.[3]
Plaintiff testified that he suffered only one injurythe initial injury on February 28, 1980 and that he has suffered problems with his knee since that date. He further testified that he was referred to Dr. Soboloff by Dr. Roy in March of 1980. While Drs. Roy and Soboloff, testifying from written reports, appeared more assured in their testimony, plaintiff, testifying solely from memory, understandibly appeared uncertain of specific dates.
The questions that could have clarified this situation were never asked:
1. Of Dr. SoboloffDid you ever treat Mr. Bazile for a wrist injury? When?
2. Of Dr. RoyHow and when do you dictate your patient notes? Could 3/12/80 have been erroneously transcribed as 3/21/81?
3. Of Mr. BazileDid Dr. Roy or Dr. Soboloff ever treat you for a wrist injury?
In the instant case, Mr. Bazile worked for Arnaud in February of 1980, as he had for the past 20 years. Arnaud and Foltz were in the process of a long-term buy out. Arnaud sold its machinery to Foltz. In February of 1980 Arnaud's was located at 308-10 Tchoupitoulas Street. In April of 81, Arnaud's moved to South Jefferson Davis Parkway where it leased space in the Foltz building from Mr. Foltz. Bazile would be sent to Foltz by Arnaud personnel to operate the machinery formerly owned by Arnaud. Arnaud would pay Bazile on its payroll account and Arnaud would be reimbursed by a credit given by Foltz at an end of the year accounting.
Mr. Bazile originally filed suit against Foltz and its insurer, United States Fidelity & Guaranty Co. (U.S.F. & G.) and Arnaud and its two insurers, Security Insurance Co. of Hartford (Security) and Hartford Accident & Indemnity Company (Hartford). Security provided workmen's compensation insurance to Arnaud for the period January 1, 1980 through October 1, 1980 at 12:01 a.m. and Hartford insured Arnaud's from October 7, 1980 through October 7, 1982 at 12:01 a.m.[4] Security began paying Mr. Bazile *114 workmen's compensation benefits under its policy and as a result of the February 28, 1980 accident. Those payments continued through July 20, 1982. Security argued that payments were due under Hartford's policy because Mr. Bazile had recovered from the February 18, 1980 accident and his later injuries were the result of the two later accidents. The trial court agreed with Security's claim for reimbursement and Hartford appealed from that judgment.
The trial judge provided the following reasons for judgment:
"THE COURT:
After listening to the testimony and evidence presented and the stipulations that were entered into between the parties the Court finds that Curtis Bazile was injured on February 28, 1980.
Reinjured again on March 11, 1980.
Was discharged by Dr. Soboloff April 18, 1980 pending the medication or the use of the medication that was given to him for a period of about four or six weeks after April, 1980.
Mr. Bazile did not go back to Dr. Soboloff until October 21, 1980, which leads the Court to believe that the injury of April 18, 1980 had been completely healed and satisfied insofar as Dr. Soboloff is concerned.
On October 21, 1980 Mr. Bazile went back to Soboloff and gave a history to Dr. Soboloff of having injured the knee again about two days to a week before the 21st date. The October 21 date, which would make it about, using seven days about the 13th or 14th of October.
At that time the Court finds that the policy of insurance that was in effect by Security Insurance Company had lapsed or stopped as of October 1, 1980 and that the new one had begun on October 7, 1980 under the Hartford Insurance Company Group.
The Court further finds at that time Mr. Curtis Bazile was an employee of Arnaud Coffee Company only and in this connection the Court holds that the operation that was entered into that wasthe examination given by Dr. Soboloff on October 21, 1980 and the treatment through June of 1981 was until the operation time, it showed that it didn't make enough improvement to not require the operation for the cyst that was operated and the surgery of June, 1981. He was hospitalized and surgery performed. From that time he stopped working and was put on compensation and was supplemented by some salary by Mr. Arnaud on a part-time basis until he was returned to a full-time basis. He returned to a full-time basis on, until October 23, 1981. Until he was put back on full pay October 23, 1981. And December of 1981 he got his last full pay from Arnaud but did get a few days pay of approximately two hundred forty dollars from Foltz Coffee Company. Actually he only got seven hours. On January 4, 1982 he was paid six hours. January 4, 1982 was the last check, and the only check he received from Foltz Coffee Company, as an employee of Foltz for seven hours of labor at eight dollars an hour. He was paid out of the regular account and didn't even go into the schedule of payroll account as such.
According to the testimony of Dr. Soboloff January of 1982 he was given a disability of ten per cent. January 8, 1982 given a disability of ten per cent. The Court finds that the Security Insurance Company was responsible to Mr. Curtis Bazile for the accident and injuries from February 28, 1980 until, all intents and purposes, it was resolved or the injury was resolved six weeks, four to six weeks after April 18, 1980. He didn't miss any work, consequently there was no necessity of paying compensation. Other than to pay the medical expense up to and including that time. The Court further finds as a matter of fact it was a part of the stipulation that the medical bills were paid by the plaintiff to Dr. Soboloff in the amount of eight hundred twenty-five dollars subject to a credit of seventy-five dollars that was reimbursed by Security. And that he also paidleaving a net amount due to the plaintiff of seven hundred fifty dollars out-of-pocket expense. And one *115 hundred eighteen dollars and thirty-nine cents for prescriptions.
Which the Court charges to Hartford Insurance Company as the insurer from October 1,October 7, 1980 until the termination of employment either by quitting or firing or whatever means he was terminated in January of 1982.
On this basis he's entitled to permanent partial disability of ten per cent from October 21, 1980 until the present time. That the amount that is due, that Security is liable from February 28 until about four to six weeks after April 18, 1980. From that time on the amount that is due is due by Hartford Insurance who picked up the insurance on October 7, 1980 to the present time.
And that the Court further finds at no time was he an employee of Foltz so that USF & G would not be liable under the terms of insurance for the workman's compensation.
The workman's compensation rate will be one hundred sixty-three dollars. Whatever the rates are. You have to get that from the schedule. You are liable from October 21 to the present time.
(OFF RECORD DISCUSSION)
THE COURT:
Four hundred fifty weeks at whatever comp rate is for ten per cent. It would be four hundred fifty weeks. That would be permanent partial.
Under the "manifest error" doctrine of Canter v. Koehring Co., 283 So.2d 716 (La., 1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978), we cannot conclude that the trial court was manifestly erroneous in its factual determinations.
Lastly, Hartford argues that because Security's third-party demand for reimbursement was filed more than one year from the date of Security's last payment to Mr. Bazile, Security's action to recover the payments has prescribed. No law is cited in support of this contention and this court has been unable to locate such a one year prescriptive period.
Security argues that its action has not prescribed. They seek to recover from Hartford under the theory of unjust enrichment, with an applicable prescriptive period of ten years under C.C. Art. 3499 (formerly C.C. Art. 3544). Minyard v. Curtis Products, Inc., 251 La. 654, 205 So.2d 422, 433 (La., 1967). The action for unjust enrichment or "actio de in rem verso" has five elements:
1. There must be an enrichment.
2. There must be an impoverishment.
3. There must be a connection between the enrichment and the resulting impoverishment.
4. There must be an absence of "justification" or "cause" for the enrichment and impoverishment.
5. There is no other remedy at law, i.e. the action is subsidiary or corrective in nature.
Security's action meets all of the elements and is an action for unjust enrichment, prescribed by ten years.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Tr. p. 92-100.
[2] Dr. Soboloff testified that he uses the word "recently" to signify within a few days to within one week. He did not know, however, if Mr. Bazile had said "recently" or "within a few days."
[3] From the surgery in June of 1981 to October of that year, Mr. Bazile was recuperating from surgery. In October of 1981 he returned to work, but the chronodromalacia gradually worsened. In November and December of 1981 he required injections into the knee. Dr. Soboloff continued treating him from October of 1981 through June of 1983 on a gradually decreasing basis. Dr. Soboloff last saw Mr. Bazile on December 3, 1983.
[4] It is conceded that Arnaud's was uninsured for approximately 7 days.